UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ROBERT CHRISTIAN, | ) | Civil Action No.: 4:13-cv-3301-BHH-TER |
| Plaintiff, | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| TRAVELCENTERS OF AMERICA, LLC d/b/a Petro and TA OPERATING, LLC d/b/a PETRO, | ) | |
| Defendants. | ) | |

**I.     INTRODUCTION**

Plaintiff brings this action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. and the Americans with Disabilities Act Amendments Act of 2008 (ADAAA). Presently before the court is Defendants' Motion to Dismiss and Compel Arbitration (Document # 7). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.

**II.    FACTUAL ALLEGATIONS**

Plaintiff alleges that he was employed as the Shop General Manager at the Petro Stopping Center in Florence, South Carolina from January of 2002 until his termination on January 31, 2013. Complaint ¶ 10. He alleges that Defendants purchased and took over operations of the Petro Stopping Center in December of 2012. Id. at ¶ 11. Plaintiff is medically diagnosed with major depressive disorder, insomnia and anxiety, which substantially limits the major life activities of sleeping and concentrating, among others. Id. at ¶ 12. Plaintiff's employer prior to Defendants purchasing Petro Stopping Center accommodated his disability. Id. at ¶ 17. Subsequent to Defendants' purchase, Plaintiff spoke with his immediate supervisor and a human resources representative on three occasions during January of 2013, and informed them of his need for a

reasonable accommodation allowing him a block of time each day to be off work so that he could take his sleep medications. Id. at ¶¶ 19, 21, 22. Defendants denied Plaintiff accommodation requests and informed him that he must be available to work twenty-four hours a day, seven days a week. Id. at ¶ 20. On January 31, 2013, one day after Plaintiff's third request for an accommodation, Defendants terminated his employment. Id. at ¶ 23.

### III.    PROCEDURAL HISTORY

Plaintiff filed a charge of discrimination with the Equal Opportunity Employment Commission (EEOC) and the EEOC issued a notice of right to sue on August 30, 2013. Plaintiff filed the present action on November 25, 2013.

### IV.    ARBITRATION AGREEMENT

On December 18, 2012, Plaintiff signed a Mutual Agreement to Resolve Disputes and Arbitrate Claims (the Agreement) with Defendant TA Operating, LLC (TAO). Agreement (Ex. A to Defendants' Motion). Attached to the Agreement is a cover sheet which provides bullet points of the information included in the Agreement. The top of the cover sheet provides

**IMPORTANT NOTICE REGARDING YOUR EMPLOYMENT WITH TA**

**YOU MUST CAREFULLY READ THE ATTACHED MUTUAL
AGREEMENT TO RESOLVE DISPUTES AND ARBITRATE CLAIMS**

Cover Sheet (Ex. A. to Defendants' Motion). It informs the employee that participation in the dispute resolution and arbitration process is a condition of employment and, if the employee decides not to agree with the terms of the Agreement, "TA will consider your employment application to be withdrawn." Id. At the bottom, following the bullet points of the important information contained within the Agreement, the cover sheet provides

**You should take the time to carefully review this important document before
you sign it. If you have questions, you may contact a member of TA's
Human Resources team by calling (440) 808-9100. You also have the right**

**the ask a lawyer about the effect and meaning of the Agreement.**

Id. Per the Agreement, Plaintiff and Defendants must resolve all claims that arise out of Plaintiff's employment through arbitration, including a pre-arbitration grievance process design to resolve claims early when possible. Agreement p.1   The Agreement defines "claims" as

> [A]ny and all disputes, claims or controversies arising out of [Christian's] employment or the termination of [Christian's] employment which could be brought in court, including, but not limited to claims under the Age Discrimination in Employment Act; Title VII of the Civil Rights Act of 1964; the Fair Labor Standards Act; the Family and Medical Leave Act; the Americans with Disabilities Act of 1990; Section 1981 through 1988 of Title 42 of the United States Code; state and local anti-discrimination laws; and any other federal, state, or local law, ordinance or regulation, and claims based on any public policy, contract, tort, or common law and any claim for costs, fees, and other expenses or relief, including attorney's fees. Claims subject to this Agreement shall not include: (i) claims relating to workers' compensation benefits; (ii) unemployment compensation benefits; (iii) claims with respect to any stock plan, employee pension or welfare benefit plan if that plan contains some form of specific grievance or other procedure for the resolution of disputes under the plan; (iv) claims filed with a federal, state, or local administrative agency (e.g., the NLRB, EEOC, etc.) or reporting of criminal activity to appropriate public authorities; and (v) claims covered by a written employment contract signed by both parties which provides for a specific, different form of dispute resolution in accordance with that contract's terms.

Agreement p. 1.  The Agreement requires that Plaintiff and Defendants engage in a pre-arbitration grievance process and, should the claims remain unresolved, that the dispute be resolved through binding arbitration.  Agreement pp. 1-4.

V.   DISCUSSION

The parties agree and, indeed, the Agreement provides that the Federal Arbitration Act (FAA), 9 U.S.C. § 3, et seq. is applicable here.  The FAA "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).  While Congress considered the advantage of expeditious resolution of disputes through arbitration in enacting the FAA, its primary purpose was to enforce agreements into which parties have entered. Volt

Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468,478 (1989).

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26.  The "liberal federal policy favoring arbitration agreements manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" Mitsubishi, 473 U.S. at 625 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983).

Initially, the court should decide if it is proper to resolve the dispute through arbitration.  We should "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Hooters of America, Inc. v. Phillips, 173 F.3d 933,938 (4th Cir. 1999).  Our inquiry is not limited to defects in contractual formation such as lack of mutual assent and want of consideration, but also includes "such grounds as exist at law or equity for the revocation of contracts." Id.; 9 U.S.C. § 2; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., at al., 473 U.S. 614, 627 (1985)("courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.").

Plaintiff concedes that the claims raised in his Complaint fall within the scope of the Agreement.  However, he argues that the terms of the Agreement render it unconscionable, invalid and unenforceable.  Specifically, Plaintiff argues that the Agreement is unconscionable because it is a contract of adhesion and because it provides for only limited discovery.  Plaintiff does not

dispute that, as set forth in the Agreement, all disputes regarding the enforcement of the Agreement shall be determined in accordance with Delaware law. See Agreement p. 4. Plaintiff does not address the fact that the Agreement also provides that "[a]ll challenges to the interpretation or enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement." Agreement pp. 4-5.

The Supreme Court has held, in a case with facts strikingly similar to those here, that where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, any challenge to the enforceability of the agreement as a whole should be resolved by the arbitrator. Rent-A-Center West, Inc. v. Jackson, 56 U.S. 63, 72, 130 S. Ct. 2772, 2779 (U.S. 2010). In Jackson, the plaintiff brought an employment discrimination lawsuit against the defendant, his former employer. Id. at 65. The defendant filed a motion to dismiss and to compel arbitration based on the arbitration agreement between the parties. Id. In addition to providing that disputes between the parties would be resolved by arbitration, the arbitration agreement also contained a "delegation" clause that provided the arbitrator would have authority to resolve disputes about the enforceability of the arbitration agreement. Id. In opposing the defendant's motion to compel arbitration, the plaintiff challenged the validity of the agreement as a whole, arguing that it was unconscionable because of the agreement to split arbitration fees and because the discovery procedures were too limited. Id. at 66, 73. The plaintiff did not attack the delegation clause specifically. Id. at 73. Therefore, the U.S. Supreme Court ruled that the plaintiff's challenges to the enforceability of the arbitration agreement should be heard by the arbitrator, not the court. Id. at 72-73.

In the present case, Plaintiff challenges the arbitration agreement as a whole. As stated

above, Plaintiff does not address the delegation clause in the Agreement, which provides that "[a]ll challenges to the interpretation or enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement." Agreement pp. 4-5. Because the Agreement specifically provides that issues regarding the enforceablilty of the Agreement itself will be decided by the arbitrator, in accord with Jackson, compelling arbitration of Plaintiff's claims is appropriate.

Plaintiff next argues that, should the court find that arbitration is proper, the court should stay this action pending the arbitration rather than dismiss the action all together, as requested by Defendants. The FAA provides that the court shall, upon application of one of the parties, stay the trial of an action if the court determines that the issues raised are subject to arbitration pursuant to an arbitration agreement. 9 U.S.C. § 3. In Aggarao v. MOL Ship Management Company, Ltd., 675 F.3d 355, 376, n.18 (4th Cir. 2012), the Fourth Circuit acknowledged that there may be some tension between its decision in Hooters, indicating that "the FAA commands the federal courts to stay any ongoing judicial proceedings" when an arbitration agreement "covers the matters in dispute," 173 F.3d at 937, and Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F. 3d 707, 709-10 (4th Cir. 2001), which provides that dismissal is proper where all of the parties' claims are covered by the arbitration agreement. Aggarao, 675 F.3d at 376, n.18. The Aggarao court further noted a split among circuit courts as to "whether a district court has discretion to dismiss rather than stay an action subject to arbitration. Id. (comparing Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 732 n. 7 (7th Cir.2005) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright."), with Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir.1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to

arbitration.")).  The court declined to resolve the disagreement, however, because not all of the claims raised in that case were arbitrable, placing the case outside the framework for dismissal as set forth in Choice Hotels.[1]  Id.

Here, as in Choice Hotels, all of Plaintiff's claims fall within the scope of the Agreement.  However, Plaintiff notes that, if this case is sent to arbitration and dismissed, he anticipates that Defendants will argue that his claims are time-barred under the Agreement's limitations period.  If Defendants are successful on that argument, Plaintiff will be left without a forum to pursue his claims.  At least one circuit court has held that a stay, rather than dismissal, is appropriate when the plaintiff would otherwise be left without a forum.  See McNamara v. Yellow Transp., Inc., 570 F.3d 950, 957 (8th Cir. 2009) ("To prevent the complete loss of a forum, however, we direct the district court on remand to enter a stay thus retaining jurisdiction to ensure a forum for McNamara's claims in the event the arbitrators hold a contractual or procedural limit bars arbitration."); see also Lloyd v. HOVENSA, LLC., 369 F.3d 263, 269 (3d Cir. 2004) (holding that the plain language of the FAA affords district court no discretion to dismiss case where one of parties applies for stay pending arbitration); 9 U.S.C. § 10 (setting forth circumstances under which the district court may vacate an arbitration award).  The undersigned finds that the Fourth Circuit's language in Hooters is most consistent with the language of the FAA and recommends staying this action pending arbitration rather than dismissal.

## VI.     CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss and Compel Arbitration (Document # 7) be granted, this matter be compelled to arbitration, and this case

---

[1] In a subsequent case, the Fourth Circuit again referenced tension between Hooters and Choice Hotels and the split among circuits but again declined to address the issue.  See Noohi v. Toll Bros., Inc., 708 F.3d 599, 605 n.2 (4th Cir. 2013).

-8-

be stayed pending completion of the arbitration.

                                                           s/Thomas E. Rogers, III  
                                                           Thomas E. Rogers, III  
                                                           United States Magistrate Judge

June 30, 2014  
Florence, South Carolina